No. 50,447

STATE OF KANSAS, *Appellee,* v. RONALD QUICK, *Appellant.*

(597 P.2d 1108)

Opinion filed July 14, 1979.

*Robert L. Taylor,* of Hutchinson, argued the cause and was on the brief for the appellant.

*Joseph P. O'Sullivan, III,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Ronald Quick was convicted of aggravated robbery (K.S.A. 21-3427) in a jury trial and sentenced to a period from five

years to life. A summary of the factual situation out of which this conviction arose follows:

At 7:00 p.m. on May 10, 1978, a man walked into the F & S Liquor Store in Hutchinson, Kansas. Stella Stewart was the only employee on duty. The man pulled a handgun and demanded money. The man received approximately $130.00. He then left the store and crossed the street in the direction of a motel.

Mr. Richard Peterson and his wife were playing with a "frisbie" in the driveway of the motel. Mr. Peterson testified that he saw a passenger leave his vehicle, cross the street to the liquor store, and hurriedly return to the car shortly thereafter. He identified the defendant as that man and was positive it was the defendant because he had worked with defendant at a roofing company in Hutchinson. Peterson testified the driver in the car started to "take off" before the defendant was completely inside the car. The car was an orange colored Ford Pinto. Mrs. Stewart, the clerk, was able to identify the defendant at the trial by two moles on his face. Defendant was arrested in Hutchinson two days later. He has continued to maintain his innocence.

At the trial defendant testified in his own behalf as follows: He is a painter by trade. He did not commit the crime. At the time of the robbery he lived in Nickerson, Kansas. He was in the home of a friend, Noel Dawkins, at 7:00 p.m. on the evening the robbery occurred. He has never owned an orange Ford Pinto automobile and did not ride in one on the evening of May 10, 1978.

His friend, Noel Dawkins, testified at the trial. He verified defendant's presence at his house from 6:30 to 7:30 that particular evening. Another friend, Marion Russell Walton, also testified at the trial. He accompanied the defendant when the defendant visited Noel Dawkins. They were at the Dawkins home from 6:30 to 7:35 p.m. on the evening of the robbery. The defendant owned and was driving a green Chevrolet automobile that evening. Defendant also produced two other witnesses who testified a green Chevrolet automobile came to the Dawkins residence around 7:00 p.m. on the evening of May 10, 1978. The alibi evidence was substantial.

The sufficiency of the State's evidence is not being questioned. The above recital of evidence of alibi bears only on a question raised concerning the improper exclusion of evidence. Defendant offered to introduce evidence that a man by the name of David Fors admitted committing the crime of which defendant was

convicted, and that Kathy Gore, a friend of David Fors, owned an orange Pinto automobile similar to the getaway car used in the robbery. The first two points concern the exclusion of this evidence.

Prior to trial the prosecution filed in writing a "motion in limine" for the following purpose:

"[T]o prohibit the Defendant or his counsel from testifying or eliciting testimony regarding alleged admissions made by one David Fors pertaining to the commission of the Aggravated Robbery offense for which the Defendant is charged.  .  .  .

.  .  .  .

"It is therefore respectfully requested from the Court that an Order in Limine be issued restraining the Defendant or any witness called on his behalf from offering any testimony concerning any alleged association by David Fors with the commission of the offense for which the Defendant is charged and the counsel for the Defendant by [sic] specifically ordered and held responsible by this Court for any testimony so offered without the subpoenaed presence of David Fors in the Reno County Courthouse during the conduct of the trial."

The motion was granted and the trial proceeded.

Before we consider the merits of this point we feel that some general discussion may be helpful. The motion in limine is recognized in Kansas. See *Febert v. Upland Mutual Ins. Co.,* 222 Kan. 197, 200, 563 P.2d 467 (1977). Judging from the records that have appeared in this court the motion in limine is being used with greater and greater frequency. Yet, despite the frequent use of the motion, very little appears in our case law concerning its nature, purpose, and proper use.

Black's Law Dictionary, p. 896 (4th ed. rev. 1968) defines in limine as: "On or at the threshold; at the very beginning; preliminarily." This term has been loosely used in practice to designate almost any motion filed and to be ruled on before trial. In recent years the use of the motion in limine has gained general acceptance. See Annot., 63 A.L.R.3d 311 (1975). The phrase, motion in limine, is not found in the procedural statutes of Kansas. See K.S.A. 60-207 and K.S.A. 22-3208, which relate to pleadings and motions generally. Authority for the use of the motion in limine in many states is found in "the inherent power of the trial court to exclude or admit evidence." *Burrus v. Silhavy,* 155 Ind. App. 558, 563, 293 N.E.2d 794 (1973). Other courts have found authority for the motion in procedural rules such as Fed. R. Civ. Proc. 16 (6) which gives the federal trial courts broad authority to conduct pretrial conferences. See *Aley v. Great*

*Atlantic & Pacific Tea Co.*, 211 F. Supp. 500, 503 (W.D. Mo. 1962).

In Kansas our trial courts in both criminal and civil cases have broad authority to conduct pretrial conferences to consider such matters as will promote a fair and expeditious trial, and to consider various matters as may aid in the disposition of the action. See K.S.A. 22-3217 and K.S.A. 60-216. The Kansas Code of Civil Procedure was patterned after the federal rules. There can be little doubt that the trial courts in Kansas have authority to entertain a motion in limine by reason of the pretrial authority conferred by statute.

The purpose of a motion in limine is to assure all parties a fair and impartial trial by prohibiting inadmissible evidence, prejudicial statements, and improper questions by counsel. It is generally agreed a protective order issued on a motion in limine should be granted only when the trial court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) The mere offer of or statements made during trial concerning the material will tend to prejudice the jury. See Rothblatt & Leroy, *The Motion in Limine in Criminal Trials: A Technique for the Pretrial Exclusion of Prejudicial Evidence,* 60 Kentucky L. J. 611, 621 (1972); and Davis, *The Motion in Limine—A Neglected Trial Technique,* 5 Washburn L. J. 232 (1966). The material to which the motion in limine is addressed may be either inadmissible under an established rule of evidence, such as the hearsay rule, or it may be excludable under a statute, such as K.S.A. 60-445, because its probative value is substantially outweighed by its tendency to prejudice.

As previously mentioned the primary purpose of the motion in limine is to prevent prejudice during trial. Its use should be strictly limited to accomplish that purpose. It must not be used to choke off a valid defense in a criminal action. See *State v. Bradley,* 223 Kan. 710, 713, 576 P.2d 647 (1978), where this court found that the motion in limine had been used to exclude relevant and material information pertaining to the defense, and that defendant's fundamental right to a fair trial had been violated.

In *Lewis v. Buena Vista Mutual Insurance Association,* 183 N.W.2d 198, 201 (Iowa 1971), that court said:

"We deem this appeal an appropriate one in which to say that cases are coming

to this court revealing questionable use of the motion in limine—questionable in the manner of its use or in its use at all. The motion is a drastic one, preventing a party as it does from presenting his evidence in the usual way. Its use should be exceptional rather than general."

We wish to add a word of caution against the overuse of the motion in limine. To protect against prejudice and to assure the parties a fair trial, certain guidelines should be observed. The following guidelines for use of the motion in limine should be kept in mind.

It is important that a proper written motion be filed to pinpoint the material or evidence to be protected against. This is necessary together with an order of the court setting forth the specific basis for exclusion or admission. A mistrial or reversible error on appeal may be avoided by having a proper motion and order drawn and filed. See *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (1977). We repeat, it is important for the motion to state the specific matter that the movant believes to be inadmissible and prejudicial. The motion should not be general in scope. See *Lewis v. Buena Vista Mutual Insurance Association*, 183 N.W.2d at 201.

When entering the order it should be temporary in nature. It is entered before trial and no one knows exactly what will turn up later during the trial. When a protective order has once been granted the offer of proof during the course of the trial must be made in the absence of the jury. It is possible events during the trial, bearing directly on questions of relevance, may support a change in the protective order. See *Twyford v. Weber*, 220 N.W.2d 919, 923 (Iowa 1974). There are instances when a motion in limine may be taken under advisement, reserving the right to rule upon the matter when it arises at trial. See *City of Indianapolis, Dept. of Met. Dev. v. Heeter*, ___ Ind. App. ___, 355 N.E.2d 429 (1976). Care must be exercised during trial because prejudice may be implanted in the minds of the jurors by asking unanswered questions and by making statements which are subsequently stricken. When such a motion is taken under advisement by the court the matter should not be raised except in the absence of the jury.

We remind attorneys in this regard that under the Rules of Professional Responsibility (DR 7-106[C][1][2]) a lawyer shall not "[s]tate or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence," nor "[a]sk any question that he has no

reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person." 224 Kan. cv.

The order resulting from a motion in limine may prohibit reference during trial proceedings to material which is irrelevant or prejudicial to a fair trial. The order is a temporary protective order. It is subject to change during the trial; and to predicate error thereon it will be necessary to again present the material or proffer the evidence during trial on motion to reconsider. Annot., 63 A.L.R.3d 311 (1975).

The order in limine granted in this case appears to have been a permanent order excluding testimony, rather than a temporary protective order directing counsel and the witnesses to make no mention of it without first gaining approval of the court outside the hearing of the jury. This, however, standing by itself, is not reversible error since appellant was not prejudiced by the granting of the motion if the evidence was properly excluded. Thus the issue in this case is whether the evidence proffered by the appellant during trial should have been admitted. Counsel for appellant made the following proffer at trial:

"[T]he evidence would show, first of all that Mr. Fors has a striking resemblance to the Defendant, these people could very well pass for twins. We have photographs available that would indicate that it would be corrobrated [sic] and verified that fact.

"Secondly the evidence would show as to Mr. Fors, that he lived with the young lady, and that that young lady would testify that during the time that they were living together, he admitted to her that he had committed the crime. The evidence would further show as to Mr. Fors, if we were allowed to offer testimony, that he resided near the liquor store, in fact in the back of it, and had frequented this liquor store on other occasions and; fourthly, the evidence would show that Mr. Fors worked at Hamilton Roofing at the same time that Mr. Peterson did and as the Court has heard, at this point Mr. Peterson's evidence was based on the fact that he had worked with this guy and recognized him from work, and I think the completion of all those factors makes it very crucial that evidence—the jury hears that evidence. Because at this point, without that evidence, the jury is put in a position of having to disbelieve the State's witnesses or disbelieve the witnesses of the Defendant, because the only thing that he could offer at this point is alibi and I think that fact, that we have somebody else, the fact that Mrs. Stewart has been robbed three times, the third time after this man was incarcerated, makes evidence concerning Mr. Fors very relevant and one fifth item that I forgot to mention, we also have, we would have a gun that came out of the hand of Mr. Fors, we have a witness come in who purchased this gun from him, who fits the description of the gun that Mrs. Stewart eventually described on the stand."

Appellee first argues that to preserve the issue for appeal

appellant was required to produce the testimony by affidavit, deposition, or oral testimony. In support of this position appellee cites K.S.A. 60-259(*g*) which deals with new trials under the code of civil procedure. This section is inapplicable in the present case. The applicable statutory section is K.S.A. 60-405 of the rules of evidence which reads as follows:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

Appellant preserved the issue for appeal when he made known to the trial court the substance of the proposed evidence.

We now return to the question of admissibility. The court orally granted the order on the record. In doing so it stated:

"Neither the defendant or his Counsel will directly or indirectly by hearsay evidence, try to show an admission of the commission of the third party that he committed the crime with which the defendant is charged. Defense Counsel will also instruct his witnesses in advance not to volunteer such information *on this general subject.*" Emphasis supplied.

Counsel for defendant thereupon asked for clarification of the limitation being imposed:

"MR. TAYLOR: The other point is, I'm trying to decide how much, how much limit is put upon us as to the defendant because Judge, there is no question that as I indicated, one of the State's witnesses in the preliminary testified upon cross-examination by myself and used as a basis of being able to identify the defendant, that he had worked with him at the at Hamilton Roofing Company, and we are prepared to bring into this Court personnel from the roofing company to show that Peterson worked out there, the State's witness, and the person that he worked with was David Fors. And apparently if he was basing his identification on that, then he is identifying David Fors. Now we've got a right to cross-examine, Judge, and I think if we're not allowed to deal with that, then Your Honor is taking away our tool of cross-examination. We have already got a witness who based his identification on that and we should be allowed to come into the Court with that evidence and cross-examine on it.

"THE COURT: I read you four Supreme Court cases, I want them followed, that's all.

"MR. TAYLOR: Are you saying we cannot offer that witness, then, to show, to rebut—

"THE COURT: Anybody else, that is right. I read you that, that is the first case. You can't show it. Somebody else, where it's direct eye-ball evidence. If the State's evidence is circumstantial, then you may, but that's what I've been reading to you."

Again during the trial counsel attempted to obtain clarification as to the extent of the prohibition. Counsel for appellant pointed out he had attempted to subpoena David Fors at least a month before trial, had talked to the officials about where he might be located, and yet Fors was never served nor made available to testify at the trial.

In explaining the extent of the protective order during the trial the court stated:

"THE COURT:   Well, I gave my ruling on the hearsay evidence part and I also gave you specific Supreme Court citations on the general rule about admission of evidence that somebody else did the crime, where the State offers direct evidence to the contrary and I still think those Supreme Court rules are applicapable [sic] and also, wait until after the trial has started, the State has finished their evidence, partly through the Defendant's, to make this motion, I have given several weeks advance notice of the trial, and they wanted to find Mr. Fors, there is no showing of when they would find Mr. Fors, and how long we would delay it, I'm going to overrule the motion and call the jury in."

The cases cited and relied on by the trial court are *State v. Potts,* 205 Kan. 42, 468 P.2d 74 (1970); *State v. Henderson,* 205 Kan. 231, 468 P.2d 136 (1970); and *State v. Calvert,* 211 Kan. 174, 505 P.2d 1110 (1973). The cases cited are authority for excluding evidence which is not directly relevant to prove the guilt or innocence of the defendant. They hold when the State relies on direct rather than circumstantial evidence for conviction, evidence offered by defendant to indicate a possible motive of someone other than the defendant to commit the crime is irrelevant absent other evidence to connect such third party with the crime. These cases are not persuasive under the facts of our present case. Here we have an admission by a third party that he committed the crime for which defendant is charged.

The proffered evidence in this case can be divided into two categories. The first was the available testimony of Robin Gresham who lived with David Fors during the time when the robbery occurred. It was alleged that she would testify that Fors told her that he, and not the defendant, had committed the robbery. This is in the nature of hearsay and to be admissible would have to come under one of the exceptions contained in the hearsay statute, K.S.A. 60-460.

The second type of evidence was not hearsay. It was both direct and circumstantial evidence in support of defendant's contention that Fors committed the crime. It consisted of photo-

graphs to show that Fors and the defendant were quite similar in appearance and might be mistaken for each other. Testimony would be offered that both Fors and the defendant worked for the roofing company at the same time, and that the State's identification witness, Peterson, might very well have gotten the identities of the two men mixed up. Further testimony was proffered that Fors owned and sold a handgun similar to the one used in the robbery. It was sold shortly after the crime was committed. Fors lived in the neighborhood of the liquor store. The liquor store had been robbed both before and after the May 10, 1978, robbery.

This latter evidence was of such a nature that its relevancy somewhat depended on the admission of the declaration against penal interest of Fors. If the declaration of Fors that he committed the crime was admitted at the trial there would then be little doubt that this additional testimony was relevant. So we turn to the question of the declaration of Fors that he committed the robbery of the liquor store.

Appellant contends the testimony falls within the exception in K.S.A. 60-460(*j*), declarations against interest. The statutory exception in pertinent part reads:

"(*j*) *Declarations against interest.* Subject to the limitations of exception (*f*) [requirements of admissible confession], a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest *or so far subjected the declarant to* civil or *criminal liability* . . . that a reasonable man in the declarant's position would not have made the statement unless he or she believed it to be true." Emphasis supplied.

When Kansas adopted the code of civil procedure, effective January 1, 1964, it joined those states which have relaxed the former rule that excluded declarations against penal interest from evidence. See McCormick on Evidence § 278, p. 674 (2d ed. 1978). With the adoption of the code the holding in *State v. Bailey,* 74 Kan. 873, 87 Pac. 189 (1906), was no longer controlling law.

The former restrictions against admissions against penal interest have been criticized by legal scholars. See 5 Wigmore on Evidence § 1477 (Chadbourn rev. 1974); McCormick on Evidence § 278 (2d ed. 1978). See also the dissent of Mr. Justice Holmes of the United States Supreme Court in *Donnelly v. United States,* 228 U.S. 243, 277, 57 L.Ed. 820, 33 S.Ct. 449 (1913).

The United States Supreme Court has indicated in *Chambers v.*

*Mississippi,* 410 U.S. 284, 298, 35 L.Ed.2d 297, 93 S.Ct. 1038 (1973), that under certain conditions admission of such evidence on behalf of a criminal defendant may be required by due process. Kansas adopted the exception by statute, and the exception was applied later in *State v. Parrish,* 205 Kan. 178, 183, 468 P.2d 143 (1970). The statute was adopted nine years before *Chambers* was handed down by the high court.

It has been called to our attention that certain statements in *State v. Wilson,* 220 Kan. 341, 346, 552 P.2d 931 (1976), would seem to be authority for excluding declarations against penal interest made by third parties. The declaration was excluded in *Wilson* on grounds of lack of relevancy and not on the general rule of exclusion. The statement in *Wilson* is overbroad and is disapproved since it recited the general rule of exclusion but failed to mention the statutory exception contained in K.S.A. 60-460(*j*).

Before a hearsay statement should be admitted as a declaration against penal interest under K.S.A. 60-460(*j*), the statement must in fact have been made against the declarant's interest so as to have the potential for subjecting the declarant to criminal prosecution at the time of its utterance. See Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule,* 56 Boston L. Rev. 148, 156 (1976). K.S.A. 60-460(*j*) contemplates that the judge, using judicial discretion, find the statement "was at the time of the assertion so far contrary" to the declarant's penal interest "that a reasonable man in the declarant's position would not have made the statement unless he or she believed it to be true." In addition, if the declarant is not present at trial it must appear a diligent effort was made to locate the declarant and that he is unavailable. Originally in order for such evidence to be admissible it had to be shown the declarant was dead. Now in those jurisdictions recognizing the rule it is generally sufficient to show the declarant is unavailable. 5 Wigmore on Evidence § 1476, p. 350 (Chadbourn rev. 1974).

A trial court does have discretion to exclude a declaration against penal interest when the required finding cannot justifiably be made under the circumstances surrounding the making of the declaration. However, the trial court in this case did not consider the statement as a declaration against penal interest. In the present case all requirements would seem to be present. The

declaration of Fors was made to a friend at a time at which he could have been prosecuted for the crime. The statute of limitations had not run on the offense. No reason appears why Fors would want to falsely admit guilt. This is not a case where an inmate in a penal institution comes forward to take the entire blame for a crime, or where accomplices are involved. Under the present circumstances a reasonable man in the position of David Fors with no previous connection with either the crime or the defendant would not be likely to make such a statement unless it were true. Some credence must attend the declaration if, as proffered by appellant's counsel, there was evidence independent of the declaration which would further support a belief that David Fors committed the crime. Here evidence was alleged to be available that Fors and the appellant were "look-a-likes," that Fors resided near the liquor store that was robbed, that Fors sold a gun similar to the one used in the robbery sometime after the crime was committed, and that Fors had lived with a Kathy Gore who owned an orange Pinto automobile similar to the getaway car used in the robbery.

The indicia of reliability of the declaration against penal interest was sufficient to justify the admission of the declaration as an exception to the hearsay rule. The court erred in failing to consider the proffered evidence as a declaration against penal interest. Without such evidence to support the defense of alibi the defense was severely hampered. The other evidence proffered by appellant concerning Fors' possible guilt was relevant evidence. Some of this proffered evidence attacked the credibility of an identification witness whose credibility was crucial to the State's case. The appellant should have been permitted to elicit such testimony in response to the testimony of Peterson, the State's main identification witness. The court also erred in excluding this evidence.

One remaining point may arise during a second trial and we will comment on it. In sentencing appellant the trial court applied the mandatory firearms sentencing statute, K.S.A. 1978 Supp. 21-4618. In doing so the trial court simply stated, "For the record, and from the record of trial, the Court will find that a firearm was used in this particular case." The trial court failed to find it was the defendant who used a firearm in this particular case.

In *State v. Mullins,* 223 Kan. 798, Syl. ¶ 3, 577 P.2d 51 (1978), we held that whether a defendant used a firearm in the commission of an Article 34 offense is a matter to be determined by the trial judge at the time of sentencing under K.S.A. 1977 Supp. 21-4618. *Mullins* was followed in *State v. McCarty,* 224 Kan. 179, 180, 578 P.2d 274 (1978). The finding of the trial court in the present case leaves something to be desired. The statement does not specify who used a firearm. The finding of the trial judge as to whether a defendant used a firearm in the commission of an Article 34 offense is to be made at the time of sentencing under K.S.A. 1978 Supp. 21-4618.

Other points raised on appeal are not likely to arise at a second trial and need not be discussed. The judgment and conviction are reversed and the case is remanded for a new trial.