NOT DESIGNATED FOR PUBLICATION

No. 124,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ORION MARK GRAF,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed October 21, 2022.
Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Orion Mark Graf timely appeals from the district court's summary
denial of his K.S.A. 60-1507 motion. Upon review of his claims, we observe the issues
have previously been raised in prior litigation and Graf is procedurally barred from
relitigating the same issues. We affirm.

FACTS

The procedural facts of this case are well known to the parties and were fully set out in *State v. Graf*, No. 116,755, 2018 WL 1352567, at *1-3 (Kan. App. 2018) (unpublished opinion). The evidence underlying these charges was obtained through a search warrant issued in a separate criminal case. Law enforcement obtained a warrant to search Graf's computers, cell phone, and other electronic devices capable of sending or receiving electronic communication. The warrant allowed law enforcement officers to search Graf's cell phone for communications between Graf and another individual in relation to the separate criminal case. However, during the search of Graf's cell phone, law enforcement officers discovered evidence of a different suspected crime; specifically, photographs of an unconscious woman in various stages of undress and photographs of Graf having sex with the woman while she was unconscious.

Law enforcement officers were able to identify the woman as L.L. The officers contacted L.L., and she told them she did not consent to the photographs. Based on L.L.'s statements, the officers halted any further searches of Graf's cell phone under the original warrant and obtained a second warrant to expand the scope of the search for evidence of the new suspected crime(s).

The district court appointed Hatem Chahine to represent Graf in this case. Chahine filed a motion to suppress evidence obtained from the search of Graf's cell phone. The parties acknowledge the motion is not included in the record on appeal, but the substance of the motion is well articulated in the State's written response and the arguments presented to the district court at the first suppression hearing. Chahine's written motion only addressed the first search warrant, as Chahine was not notified by the State about the second warrant until after he filed the motion. The motion generally asserted the warrant was facially overbroad and law enforcement officers exceeded the scope of the warrant by searching through photos on Graf's cell phone when the officers were supposed to be

investigating whether Graf sent threatening messages to another individual in an unrelated matter.

At the suppression hearing, Chahine argued both search warrants were overbroad. He asserted the officers exceeded the scope of the first warrant and the second warrant did not cure the issue because it was unclear whether or when the officers stopped searching after they first discovered potentially incriminating photos. The district court denied Graf's motion, finding the officers did not exceed the scope of the first search warrant and acted extremely reasonably in halting their search and contacting L.L. prior to seeking the second warrant. The district court concluded the officers acted in good-faith reliance on the warrants. It found that even if the first search warrant was too broad, the officers essentially cured the issue themselves by obtaining the second warrant, which the district court found was not overly broad.

Shortly after his suppression motion was denied, Chahine filed a motion to withdraw as Graf's attorney, citing "a complete break-down of lawyer-client communication." The district court held a hearing on the motion, and Chahine explained he felt Graf lost faith in him after the suppression hearing and Chahine did not believe their attorney-client relationship could be repaired. The district court allowed Chahine to withdraw based on the breakdown in communication and appointed Branden Smith to represent Graf.

Smith filed several pretrial motions on Graf's behalf. Relevant to the issues on appeal, Smith filed a motion to exclude a recording of a call between Graf and L.L. in which Graf admitted to having sex with L.L. while she was unconscious. Graf was unaware the call was being monitored and recorded by law enforcement. Smith also filed a supplemental motion to suppress the evidence obtained from the two search warrants issued to search Graf's cell phone. Smith incorporated by reference the arguments Chahine made about the search warrants but also added a number of grounds attacking

3

the validity of the searches. Smith argued the first warrant was void because it was not executed within 96 hours of its issuance. He further asserted the first warrant did not authorize law enforcement to search Graf's electronic devices; rather, it simply authorized searching Graf's home *for* electronic devices. Smith further argued the warrants were overbroad and lacking in particularity. Additionally, the motion asserted the good-faith exception did not apply because:

> "(1) [T]he affiant misled the issuing judge with a reckless or knowing disregard for the truth; (2) the issuing judge abandoned her judicial role; (3) the affidavit supporting the search warrant was 'bare bones' or 'so lacking in indicia of probable cause' that belief in the existence of probable cause is unreasonable; and (4) the warrant was so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid."

The district court held a hearing on April 24, 2015, regarding all pending motions. At the conclusion of the hearing, the district court was unpersuaded by Graf's supplemental motion to suppress the evidence obtained from his cell phone. The district court further found the recording of Graf's conversation with L.L. was admissible.

Graf's jury trial was set to begin on May 18, 2015; however, on May 12, 2015, based on plea negotiations he appeared in court to honor his plea agreement with the State. In exchange for Graf pleading no contest to one count of attempted rape and one count of attempted aggravated criminal sodomy for acts committed in March through December 2013, the State agreed to dismiss five other felony charges and one misdemeanor charge and agreed not to file a new case involving battery on a corrections officer. The State further stipulated it would stop trying to gain access to an encrypted hard drive belonging to Graf, which had previously been seized and turned over to the FBI. The district court advised Graf of the rights he would be waiving by entering his pleas, after which Graf pled no contest to one count each of attempted rape and attempted aggravated criminal sodomy. Based on his pleas, the district court took judicial notice of

the factual basis established at the preliminary hearing and convicted Graf of both charges.

Prior to sentencing, Graf filed a motion to dismiss Smith, alleging Smith pressured him into entering his pleas despite Graf's desire to go to trial. The district court allowed Smith to withdraw from the case and appointed Michael Clarke to represent Graf. Clarke filed a presentence motion to withdraw plea, alleging Graf was not competent at the time his pleas were entered due to mental disease or defect. In December 2015, the district court held a hearing on Graf's motion. Graf testified he told Smith he changed his mind about entering a plea immediately before the plea hearing. He claimed he discussed the plea agreement with Smith prior to the date of the hearing but, on the date of the plea hearing, he told Smith he did not feel competent to enter his pleas because he was experiencing symptoms of mental illness.

A clinical psychologist, Dr. Robert Barnett, testified he performed a mental health evaluation on Graf. Ultimately, Dr. Barnett believed Graf was likely not competent at the time he entered his pleas. Smith testified about his discussions of the plea agreement with Graf. Smith told Graf there was very little chance he would prevail at trial after the district court denied his suppression motions. Smith advised Graf of all his potential options and recommended Graf accept the State's plea offer. Still, Smith told Graf it was his decision whether to go to trial and Smith would try the case if that was what Graf wanted. Smith testified Graf never told him he did not feel competent to enter his pleas and at no point did Smith feel he needed to seek a competency evaluation.

The district court denied Graf's presentence motion to withdraw his pleas. The district court found Smith provided Graf competent representation and there was no evidence Graf was misled, coerced, mistreated, or unfairly taken advantage of. The district court also found there was no evidence Graf did not understand the nature of the plea agreement or the consequences of his pleas at the time he entered them. At Graf's

sentencing hearing in January 2016, the district court sentenced Graf to a total controlling term of 216 months' imprisonment. On direct appeal, another panel of this court affirmed the district court's denial of Graf's motion to withdraw his pleas. *Graf*, 2018 WL 1352567, at *5. The mandate was issued September 14, 2018.

Graf subsequently filed a pro se K.S.A. 60-1507 motion in March 2019, alleging Chahine and Smith were ineffective for a variety of reasons. Graf was appointed counsel, and his claims were generally narrowed down to arguments regarding his attorneys' efforts to suppress evidence. Graf also claimed his attorneys failed to properly advise him as to the applicable period of postrelease supervision; however, Graf explicitly acknowledges that claim is unsupported by the record and he is not pursuing it on appeal.

The State moved for summary denial of Graf's K.S.A. 60-1507 motion, and the district court held a nonevidentiary preliminary hearing in July 2021. Following the hearing, the district court summarily denied Graf's motion, finding the motion, files, and records of the case conclusively demonstrated he was not entitled to relief. The district court found there was no legal merit to any of Graf's complaints about his attorneys' efforts to suppress evidence and, even if his attorneys had advanced the arguments identified in Graf's K.S.A. 60-1507 motion, his suppression motions would have been denied. Specifically, the district court reasoned that even if additional arguments had been made or evidence had been presented in support of Graf's motions, the officers still conducted the searches in good-faith reliance on the warrants; therefore, the evidence would not have been suppressed. Additional facts are set forth as necessary.

ANALYSIS

*Standard of Review and Applicable Legal Principles*

Under current Kansas law, a district court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

"[Our] standard of review depends upon which of these options the district court used." 311 Kan. at 578. When, as occurred here, the district court denies a K.S.A. 60-1507 motion based only on the motions, files, and records after a nonevidentiary preliminary hearing, we are in as good a position as the district court to consider the merits. Therefore, our standard of review is de novo. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018); *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

As the movant, Graf bears the burden to prove his K.S.A. 60-1507 motion warranted an evidentiary hearing by making more than conclusory contentions and stating an evidentiary basis in support of his claims. See *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018). In deciding whether an evidentiary hearing must be held, the district court generally must accept the factual allegations set out in the motion as true. See *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005). But the factual allegations must be specific, not mere conclusions. *Mundy*, 307 Kan. at 304.

7

A district court must set aside a movant's conviction if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2021 Supp. 60-1507(b). The right to *effective* counsel is embodied in the Sixth Amendment to the United States Constitution and "plays a crucial role in the adversarial system." *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]); see *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985) (adopting *Strickland*).

When a defendant alleges his or her plea was entered due to ineffective assistance of counsel, "'[t]he defendant must show that counsel's performance fell below the standard of reasonableness and that there was a reasonable probability that, but for counsel's errors, the defendant would not have entered the plea and would have insisted on going to trial.' [Citation omitted.]" *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021). Courts strongly presume counsel's conduct fell within the broad range of reasonable professional assistance. Strategic choices counsel makes after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. And strategic choices counsel makes after an incomplete investigation can still fall within the wide range of reasonable professional assistance if counsel's decision to limit the investigation is supported by reasonable professional judgment. 313 Kan. at 750. The burden is on Graf to establish his counsel's representation fell below an objective standard of reasonableness viewed at the time of counsel's conduct. See *Strickland*, 466 U.S. at 687-88, 690.

While some decisions in a criminal case remain with the accused—such as what plea to enter, whether to waive a jury trial, or whether to testify—other decisions during a criminal case—such as what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions—are left to the defense counsel. *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). But simply invoking the word "'strategy'" does not protect "'the performance of a criminal defendant's lawyer from

8

constitutional criticism.'" *Sola-Morales*, 300 Kan. 885, 887, 335 P.3d 1162 (2014). However, as the movant, Graf bears the burden to prove trial counsel's alleged deficiencies did not result from strategy. See 300 Kan. at 888.

*Discussion*

*Graf cannot relitigate issues previously raised.*

Graf's complaints about his attorneys' efforts to suppress evidence obtained under either search warrant were addressed and denied by another panel of this court in relation to his convictions in a separate case based on evidence obtained under the same warrants. *Graf v. State*, No. 120,736, 2020 WL 5994011, at *9 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1040 (2021). And his complaints about the voluntariness of his pleas in light of his attorneys' efforts were addressed in his direct appeal from his underlying convictions in this case. *Graf*, 2018 WL 1352567, at *5.

Because Graf previously raised these issues, we must determine if his claims are now barred by issue preclusion and/or claim preclusion. In *In re Care & Treatment of Sigler*, 310 Kan. 688, 697-98, 448 P.3d 368 (2019), our Supreme Court explained the preclusionary bars to previously adjudicated claims and issues as follows:

> "We have recognized collateral estoppel and res judicata as distinct, albeit closely related, doctrines barring relitigation of prior adjudications. See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002) ('While the concept of res judicata is broad enough to encompass both claim preclusion and issue preclusion, the modern trend is to refer to claim preclusion as res judicata and issue preclusion as collateral estoppel.'). 'Claim preclusion is a common-law doctrine, designed to prevent relitigation of a final judgment.' *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012). In contrast, '[i]ssue preclusion prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action.' 293

9

Kan. at 778. However, the requirements that must be met 'before a party will be estopped from collaterally attacking a prior adjudication' (issue preclusion) are different from the conditions required for res judicata (claim preclusion). *Waterview*, 274 Kan. at 1023 (citing *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 [1999] [discussing requirements for res judicata and collateral estoppel])."

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise unlimited review. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). "[R]es judicata prevents relitigation where the following requirements are met: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made." *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 (2009). "An issue is res judicata when [these] four conditions concur." *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1999). A change in any one of these conditions may render res judicata inapplicable. See 267 Kan. at 478.

Whether the doctrine of collateral estoppel applies is likewise a question of law subject to de novo review. *In re Care & Treatment of Sigler*, 310 Kan. at 699. Collateral estoppel applies where (1) a court has rendered a prior judgment "'on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties are the same or in privity,'" as in the prior proceeding, "'and (3) the issue litigated has been determined and is necessary to support the judgment.'" *In re Care & Treatment of Easterberg*, 309 Kan. 490, 502, 437 P.3d 964 (2019).

The same search warrants used to obtain the evidence supporting Graf's convictions here also resulted in the discovery of incriminating evidence which led to Graf's convictions for two counts of breach of privacy in a separate criminal case. In Graf's other case he sought habeas relief for his breach of privacy convictions, alleging

his attorney in that case was ineffective for not seeking to suppress evidence obtained under the two warrants. The district court denied relief, and another panel of this court affirmed, finding the warrants were not overly vague or broad and the good-faith exception would have likely prevented suppression of the evidence. *Graf*, 2020 WL 5994011, at *9.

Graf in this case is again challenging searches conducted under the same warrants for nearly identical reasons, and the district court's reasoning was largely consistent with the prior panel's rationale. See 2020 WL 5994011, at *9. In other words, the parties are the same as in the prior proceeding, the issue was fully litigated therein, the prior court rendered a judgment on the merits based on the same facts and circumstances as are relevant here, and its decision was necessary to support the judgment in the prior case. Accordingly, issue preclusion bars Graf's present claims related to the evidence obtained under either search warrant. See *In re Care & Treatment of Easterberg*, 309 Kan. at 502.

Moreover, Graf fails to address the district court's finding the good-faith exception would have prevented suppression of the evidence, which is ultimately fatal to his argument on appeal. Because Graf does not argue the point, he cannot show any reason the good-faith exception would not equally apply to the evidence supporting his convictions in this case. Notwithstanding his additional failures to brief the point as further explained herein, we find Graf is precluded from seeking relief in relation to the search warrants because he has not acknowledged, much less distinguished, the prior panel's ruling.

Further, any complaints about Smith's investigation of the case are also barred by the rules against successive motions and the doctrines of claim and/or issue preclusion. Graf litigated this issue in his presentence motion to withdraw his pleas. The district court found Graf was represented by competent counsel at the time he entered his pleas; he was not misled, coerced, or taken advantage of; and, despite some history of mental illness,

his pleas were understandingly and voluntarily made. The ruling was affirmed on direct appeal. *Graf*, 2018 WL 1352567, at *5. Similarly, any claims regarding either of his attorneys' failure to investigate his history of mental illness is barred because the panel's ruling on direct appeal established Graf was not prejudiced by the alleged deficiencies. 2018 WL 1352567, at *5.

The requirements for res judicata and/or collateral estoppel are clearly met here, and the preclusionary effect of the prior rulings—whether characterized as issue preclusion or claim preclusion—is equally fatal to Graf's arguments. See *In re Care & Treatment of Sigler*, 310 Kan. at 697-98 (issue and claim preclusion bar relitigation of prior adjudications); *Woods v. State*, 52 Kan. App. 2d 958, 964, 379 P.3d 1134 (2016) (res judicata bars consideration of issue raised in K.S.A. 60-1507 motion that was previously ruled on in direct appeal); see also *State v. Neal*, 292 Kan. 625, 630, 258 P.3d 365 (2011) (acknowledging general rule that defendant must raise all available issues on direct appeal); Supreme Court Rule 183(c)(3) (2022 Kan. S. Ct. R. at 243) ("A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal."). Those issues previously litigated by Graf and currently included in his arguments are barred by collateral estoppel and/or res judicata.

*Graf's attorneys competently filed multiple motions to suppress evidence.*

Graf argues his attorneys were deficient in their investigation and presentation of his motions to suppress evidence. Graf asserts his attorneys should have utilized an expert witness to testify in support of his suppression motion(s) based on the technology involved with his electronic devices and law enforcement's search of the same. His arguments on this point are largely conclusory, and he fails to provide any meaningful argument or explanation as to what testimony an expert witness could have provided and how it would have affected the district court's ruling. See *Mundy*, 307 Kan. at 304.

Graf further complains Chahine was unaware the officers obtained a second warrant at the time he filed his suppression motion. From our review of the record, it is not clear what argument Graf has incidentally raised with this point. To the extent he makes any argument, we deem the point waived or abandoned due to improper briefing. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Even if we addressed this complaint, Graf's concerns ignore the fact Chahine made substantial arguments regarding the second warrant at the hearing on the motion to suppress, which the district court considered and denied. Graf further fails to acknowledge or consider his claimed deficiencies in Chahine's suppression motion were relitigated when Smith filed a subsequent motion to suppress, challenging the admission of any and all evidence obtained under both warrants, which the district court also considered and denied.

Additionally, Graf fails to address the district court's conclusion the good-faith exception would have prevented suppression of the evidence even if his attorneys had convinced the district court the search warrants were issued improperly. An issue not briefed is deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Because he fails to address this point, Graf has failed to show prejudice by his attorneys' performance and cannot establish he is entitled to relief. See *Hutto*, 313 Kan. at 750.

In his K.S.A. 60-1507 motion, Graf complained his attorneys were ineffective in failing to suppress law enforcement's recording of the call between Graf and L.L. But this point is not adequately addressed in Graf's appellate brief. Therefore, we deem the argument waived or abandoned. See *Davis*, 313 Kan. at 248. But even considering the argument on the merits, it is still unpersuasive. The State points out Graf challenged the recorded statements as a product of coercive police conduct. However, it was undisputed

Graf was unaware he was being recorded by law enforcement, so there is essentially no legal merit to his underlying suppression argument.

The State acknowledges the district court could have excluded the recording based on the fact there were gaps in the recording; specifically, the first 16 minutes of the call were not recorded. But the State correctly notes the district court's authority to exclude the recording depends on whether there is an adequate explanation for the gaps in the recording. See *State v. Treadwell*, 223 Kan. 577, 581, 575 P.2d 550 (1978). Here, Officer Josh Leitner testified the gap in the recording was accidental; he did not know the recording initially failed to start, and he immediately recorded the remainder of the call once he realized the problem. In ruling on Graf's K.S.A. 60-1507 motion, the district court found there was no evidence of bad faith on the part of law enforcement when it failed to capture the first 16 minutes of the call. Based on this finding, there would have been no reason for the district court to exclude the recording based on part of the conversation not being recorded.

Graf has failed to show he was entitled to an evidentiary hearing on his allegations regarding his attorneys' efforts to represent him prior to his no-contest pleas. The district court did not err in summarily denying Graf's K.S.A. 60-1507 motion after the nonevidentiary preliminary hearing.

Affirmed.